## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**
     **Plaintiff,**

    **vs.**

**WILLIE LEE EDWARDS JR**

    **Defendant**

)
)
)
)
)
)
)
)
)
)

**CASE NO. 19-CR-00593-JCH**

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 1 2023

MITCHELL R. ELFERS
CLERK

# NOTICE

**FILE INTO CASE**

---

" WLEJ ENTERPRYSE REVOCABLE LIVING TRUST"

By : /s/Willie-lee: Edwards Jr, TTEE

**WILLIE LEE EDWARDS JR**

C/O 3167 San Mateo NE #272

Albuquerque, NM 87110

## WLEJ ENTERPRYSE
### Revocable Living Trust

I, WILLIE LEE EDWARDS Jr, presently of Albuquerque, New Mexico (the "Grantor") declare and make this revocable living trust (the "Living Trust"). This Living Trust will be known as: **WLEJ ENTERPRYSE** Revocable Living Trust.

BACKGROUND:

A. The Grantor presently owns property (the "Property") as described in Schedule A.

B. The Grantor wishes to ensure that this Property and any income derived from this Property is managed and eventually distributed according to the following terms.

### Trust Purpose

1. This Living Trust is created for the benefit of the Beneficiaries to ensure they are well provided for after the death of the Grantor, however during the lifetime of the Grantor, the interests of the Grantor will be considered primary and superior to the interests of the Beneficiaries. With this purpose, the primary asset management goal for this Living Trust will be the protection of the value of the Property. The secondary asset management goal for this Living Trust is to generate income and growth at a reasonable risk.

### Trustee

2. During their lifetime, and unless and until both become incapacitated, the primary trustee (the "Primary Trustee") of this Living Trust shall be, Edwards, Willie-Lee: of Albuquerque, New Mexico and Edwards, Willie Lee of Albuquerque. If a Primary Trustee dies or becomes incapacitated, the other Primary Trustee will continue as the sole Primary Trustee of this Living Trust.

3. In the event that both Primary Trustees are either dead or incapacitated, then Edwards Willie Lee Jr (the "Successor Trustee") will serve as the acting Trustee of this Living Trust.

### Beneficiaries

4. Upon the death of the Grantor, the following individual(s) will comprise the beneficiaries (the "Beneficiaries") of this Living Trust: a. the residuary beneficiary, All offspring created through the Body of Edwards, Willie Lee of Albuquerque, New Mexico; and b. any heir or issue of those beneficiaries that is entitled to a benefit under this Living Trust in the place of any then deceased beneficiary.

### Assign and Convey Property to Living Trust

5. WILLIE LEE EDWARDS Jr, as Grantor, has or will assign, convey and deliver all of the rights, title and interest in the Property as described in Schedule A of this document as a gift and without consideration, to be held by this Living Trust.

### Amendment During Grantor's Lifetime

6. At any time during the lifetime of the Grantor and while the Grantor is not incapacitated, the Grantor may, subject to the other provisions of this section, alter or amend this Living Trust on delivery to the acting Trustee of a written instrument signed by the Grantor. Amendments may include, but are not limited to, the following:

a. The Grantor may change the number and identity of the Grantors, the Trustees, the Successor Trustees or the Beneficiaries.

b. The Grantor may add or withdraw property from this Living Trust.

7. This Living Trust may not be amended after the death of the Grantor.

### Revocation During Grantor's Lifetime

8. At any time during the lifetime of the Grantor and while the Grantor is not incapacitated, the Grantor may, subject to the other provisions of this section, revoke this Living Trust in its entirety on delivery to the acting Trustee of a written instrument signed by the Grantor. In the event of such revocation, the remaining Property will revert to the Grantor after all the debts and expenses attributable to the Living Trust have been paid.

9. This Living Trust may not be revoked after the death of the Grantor.

### Distributions During the Lifetime of the Grantor

10. During the lifetime of the Grantor and while the Grantor is not incapacitated, the acting Trustee will distribute as much of the income and principal of the Living Trust to the Grantor as the Grantor may request. While the Grantor is incapacitated and no longer able to manage or continue to manage their own affairs, then the acting Trustee may withhold or make payments out of the resources of this Living Trust of any amount that the acting Trustee in their sole judgment deem appropriate for the maintenance, comfort and welfare of the Grantor.

## Distributions Upon Death of the Grantor

11. Upon the death of the Grantor, and after resolving all applicable legal debts and obligations of the Grantor, the acting Trustee will expeditiously act to distribute the remaining Property as directed in this section.

12. After resolving all applicable legal debts and obligations of the Grantor, the acting Trustee will distribute the remaining property in this Living Trust in EQUAL shares (individually the "Share" and collectively the "Shares") to the following Beneficiaries:

a. All offspring created through the Body of Edwards, Willie Lee of Albuquerque, New Mexico;

13. Where a Beneficiary is under the age of 21 years at the time of the Final Distribution, and that Beneficiary is not an Adult Dependent Beneficiary, the acting Trustee will then act as trustee(s) by holding that Share in a separate trust for that Beneficiary under the same terms and conditions as outlined in this Living Trust, and will keep that Share invested, pay the income or capital or as much of either or both as the then acting trustee(s), in their sole discretion, consider advisable for the maintenance, education, advancement or benefit of that Beneficiary until that Beneficiary reaches the age of 21 years whereupon the then acting trustee(s) will pay or transfer the rest and residue of that Share to that Beneficiary.

14. Where a Beneficiary is an Adult Dependent Beneficiary at the time of the Final Distribution, the acting Trustee may, at their sole discretion: a. Continue to act as trustee(s) by holding the Share of any Adult Dependent Beneficiary in a separate trust, subject to the same terms and conditions contained in this Living Trust, and to keep that Share invested, and pay the income or capital or as much of either or both as the then acting trustee(s) consider advisable for the maintenance, education, advancement or benefit of that Adult Dependent Beneficiary; or

b. Pay or transfer all capital, assets and property of that Share or the amount remaining of that Share of that Adult Dependent Beneficiary to any parent, custodian or guardian of that Adult Dependent Beneficiary subject to the same terms and conditions contained in this Living Trust and the receipt by that parent, custodian or guardian will discharge all duties and obligations of the acting Trustee.

15. If any of the named Beneficiaries do not survive the Grantor by at least thirty (30) days but do leave an heir or issue who survives the Grantor by at least thirty (30) days, then the Specific Gift or the Share designated for that Beneficiary, of whatever kind and character, and wherever located, will be distributed per stirpes among those surviving heirs or issue. Where those surviving heirs or issue are not of the age of majority, the acting Trustee may pay or transfer all capital, assets and property attributable to those minor heirs or issue of that Beneficiary to any parent, custodian or guardian of those minor heirs or issue, subject to the same terms and conditions contained in this Living Trust, and the receipt by that parent, custodian or guardian will discharge all duties and obligations of the acting Trustee.

16. If any of the residual Beneficiaries do not survive the Grantor by at least thirty (30) days and do not leave an heir or issue who survives the Grantor, then the Share designated for that Beneficiary, will revert to the residue of this Living Trust.

17. If all of the successor Beneficiaries do not survive the Grantor by at least thirty (30) days and do not leave an heir or issue who survives the Grantor by at least thirty (30) days, then all of the remaining property in this Living Trust, of whatever kind and character, and wherever located,

will revert to the estate of the Grantor.

18. If any of the real property to be distributed in this Living Trust remains subject to a mortgage at the time of the Final Distribution, then the Beneficiary taking that mortgaged property will take that property subject to that mortgage and the Beneficiary will not be entitled to have the mortgage paid out or resolved from the remaining assets or residue of this Living Trust.

19. If any of the personal property to be distributed in this Living Trust is subject to any encumbrances or liens at the time of the Final Distribution, then the Beneficiary taking that property will take that property subject to those encumbrances or liens and the Beneficiary will not be entitled to have any encumbrance or lien paid out or resolved from the remaining assets or residue of this Living Trust.

## Trustee Bond

20. Subject to the laws of the Universe and any other applicable jurisdiction, no bond or security of any kind will be required of any Trustee appointed in this Living Trust agreement.

**Trustee Liability**

21. The Trustee will not be liable to this Living Trust, the Grantor or to the Beneficiaries for any action or failure to act resulting in loss or harm to this Living Trust, the Grantor or to the Beneficiaries except in the case of gross negligence, willful misconduct, or reckless indifference to the purposes of the trust or the interests of the Beneficiaries. A Trustee will only be responsible for his or her own acts and no Trustee will be liable for any act or actions occurring in the periods before or after the tenure of that Trustee. Any outstanding liabilities of a dead, resigning or removed Trustee are not discharged or affected by the Trustee's death, resignation or removal.

**Trustee Death or Resignation**

22. A Trustee may resign at any time for any reason upon at least 30 days' notice to the Grantor, if the Grantor is still alive, to any remaining Trustee, if there are any, and to the Qualified Beneficiaries. If a Trustee dies, that Trustee will cease to be a Trustee as of the date of their death.

**Trustee Removal**

23. During the lifetime of the Grantor, and unless and until the Grantor becomes incapacitated, the Grantor may remove a Trustee for any reason or for no reason at the sole discretion of the Grantor.

24. After the death of the Grantor, the Qualified Beneficiaries may, by unanimous vote of all of the Qualified Beneficiaries, remove a Trustee for any reason or for no reason at the sole discretion of the Qualified Beneficiaries.

25. At any time after the death or disability of the Grantor, a Trustee or a Beneficiary may apply to a court of competent jurisdiction to remove a Trustee. A Trustee may also be removed by the court on the court's own initiative.

**Trustee Replacement**

26. At any time where the Grantor is alive and not incapacitated and where a Trustee has been removed, died, resigned or is no longer able to act as Trustee for any reason, a replacement Trustee may be appointed by the Grantor.

27. Where the Grantor is dead or incapacitated, and where a Trustee has been removed, died, resigned or is no longer able to act as Trustee for any reason, and where a replacement Trustee is deemed necessary by the remaining acting Trustee, a replacement Trustee may be appointed by a majority vote of all acting Trustees still able and authorized to act.

28. Where the Grantor is dead or incapacitated, and where the Living Trust is left with no Trustee, a replacement Trustee may be appointed by a unanimous vote of the Qualified Beneficiaries.

**Trustee Powers**

29. Powers granted to an acting Trustee of this Living Trust include, but are not limited to, the Following: a. The Trustee will have the same rights and obligations to manage the Property as if the Trustee were the owner of the Property.

b. After the death of the Grantor, the Trustee will have the power to appoint one or more individuals or institutions to act as co-Trustee where it is deemed reasonable and in the best overall interest of this Living Trust.

c. The Trustee may employ and rely on the advice of experts including, but not limited to, legal counsel, accountants and investment advisors to help in the management of the Property where that hiring is deemed reasonable and in the best overall interest of this Living Trust.

d. The Trustee may retain, exchange, insure, repair, improve, sell or dispose of any and all personal property belonging to this Living Trust as the Trustee deems reasonable and in the best overall interest of this Living Trust, without liability for loss or depreciation.

e. The Trustee may invest, manage, lease, rent, exchange, mortgage, sell, dispose of or give options without being limited as to term and to insure, repair, improve, or add to or otherwise deal with any and all real property belonging to this Living Trust as the Trustee deems reasonable and in the best overall interest of this Living Trust, without liability for loss or depreciation.

f. The Trustee may maintain, continue, dissolve, change or sell any business which is part of this Living Trust, or purchase any business on behalf of this Living Trust, as the Trustee deems reasonable and in the best interest of this Living Trust.

g. The Trustee may purchase, maintain, convert and liquidate investments or securities, at reasonable risk, and for the purpose of generating income and growth, and vote stock in person or by proxy, or exercise any option concerning any investments or securities, as the Trustee deems reasonable and in the best overall interest of this Living Trust, without liability for loss or depreciation.

h. The Trustee may open or close bank accounts wherever reasonable and in the best interest of this Living Trust.

i. The Trustee may invest and reinvest the assets of this Living Trust, at reasonable risk, for the purpose of generating income and growth, as the Trustee deems reasonable and in the best overall interest of this Living Trust, without liability for loss or depreciation.

j. The Trustee may hold un-invested cash and unproductive property where it is reasonable and in the best interest of this Living Trust to do so including, but not limited to, for the purpose of protecting the capital and principal of this Living Trust.

k. The Trustee may lend funds to any borrower where the loan is adequately secured by sufficient collateral and where the loan is reasonable and in the best overall interest of this Living Trust.

l. The Trustee may borrow funds from any lender and mortgage or otherwise encumber any asset belonging to this Living Trust where the loan is reasonable and in the best overall interest of this Living Trust.

m. The Trustee may maintain, settle, abandon, sue or defend, or otherwise deal with any claim where it is reasonable and in the best interest of the Living Trust to do so.

n. Where there are no other resources available, and where the Trustee is compelled to do so, the Trustee may resolve any legally enforceable debts, taxes, reasonable funeral expenses, burial expenses and any expenses related to the final illness of the Grantor out of the resources of this Living Trust.

o. The Trustee may make the Final Distribution in any combination of cash and property. Property selection and valuation in the course of the Final Distribution will be made in the good faith discretion of the Trustee and will be binding on all Beneficiaries.

30. It is incumbent on the Trustee to act as fiduciaries, in good faith and in the best interest of the Living Trust.

31. All decisions of the acting Trustee, made in good faith, regarding the management of this Living Trust will be final and binding on all parties.

32. The above authority and powers granted to the Trustee are in addition to any powers and elective rights conferred by state or federal law or by other provision of this Living Trust and may be exercised as often as required, and without application to or approval by any court.

**Trustee Compensation**

33. Any Trustee who is not a Beneficiary of this Living Trust will receive reasonable compensation out of the resources of this Living Trust for services rendered. A Trustee who is also a Beneficiary under this Living Trust will serve without compensation.

**Trustee Expenses**

34. A Trustee is entitled to be reimbursed out of the income and property of this Living Trust for any and all expenses, including interest where appropriate, where the expense is reasonably and properly incurred in the management of this Living Trust.

**Spendthrift Clause**

35. No Beneficiary of this Living Trust will have the power to transfer, sell, assign, or otherwise encumber any assets or property held by this Living Trust prior to the Final Distribution by the acting Trustee. Similarly, the right of distribution held by any Beneficiary under this Living Trust agreement will not be subject to judicial encumbrance prior to the Final Distribution by the acting Trustee.

**Tax Identification**

36. For tax purposes, this Revocable Living Trust will be identified by the Employer Identification Number during the lifetime of the Grantor along with Social Security Number if necessary to identify grantor. ██-███8496 EIN#

**Homestead Tax Exemption**

37. If the principal residence of the Grantor is held within this Revocable Living Trust, the Grantor maintains the right to possess and inhabit the residence without rent and charge-free, for the duration of their lifetime. This is intended for the purpose of giving the Grantor a beneficial interest and possessor rights in the residence and to ensure that the Grantor does not lose any eligibility for a state homestead tax exemption that they would otherwise qualify for.

**Vote of Minor or Adult Dependent Beneficiaries**

38. Where a Beneficiary is a Minor or Adult Dependent Beneficiary and a vote, consent, or decision of the Qualified Beneficiaries is required, then the parent, custodian or guardian for that Minor or Adult Dependent Beneficiary, acting in the best interest of that Minor or Adult Dependent Beneficiary, will be allowed to take the place of that Minor or Adult Dependent Beneficiary for the purpose of that vote, consent, or decision.

## Termination of Trust

39. This Living Trust will terminate where the Property of this Living Trust is exhausted through distributions.

40. In the event that the acting Trustee concludes that the value of the Property is insufficient to justify the cost of administration and that the aggregate value of the Property is less than the value of land resource value the acting Trustee may terminate this Living Trust after providing notice to the Qualified Beneficiaries. Where this Living Trust is terminated under this section, the acting Trustee will distribute the Property in a manner consistent with and as described in the distributions sections of this Living Trust.

## Abstract of Trust

41. The acting Trustee may execute an abstract of this Living Trust (the "Abstract of Trust") and may present the Abstract of Trust to a financial institution as proof of the existence of this Living Trust. The Abstract of Trust should not contain full details of the property holdings of the Living Trust nor should it name all of the Beneficiaries of the Living Trust. Any person who is presented with an Abstract of Trust with regard to this Living Trust will be held harmless for relying on the Abstract of Trust.

## Governing Law

42. This Living Trust will be governed in accordance with the laws of the Universe at its highest and the laws of equity at its lowest.

## Severability

43. If any provisions of this Living Trust are deemed unenforceable, the remaining provisions will remain in full force and effect.

## Definitions

44. For the purpose of this Living Trust the following definitions will apply:

a. "acting Trustee" means any Trustee who is currently serving as a trustee of this Living Trust.

b. "Adult Dependent Beneficiary" means an adult beneficiary who is unable to manage their own financial affairs by reason of mental or other disability.

c. "age of majority" means the age of majority of the jurisdiction where a beneficiary ordinarily resides.

d. "incapacity" or "incapacitated" means when a person is unable to manage their own financial affairs by reason of mental or other disability.

e. "Minor Beneficiary" means a beneficiary who is under the legal age of majority.

f. "Trustee" means any Primary Trustee or Successor Trustee as well as any replacement or additional trustee appointed for this Living Trust.

g. "Qualified Beneficiary" means any beneficiary that is then entitled to a benefit under this Living Trust.

IN WITNESS WHEREOF, the parties hereto have signed their names on this third moon, third quarter, 7th day of the weekday in Albuquerque, New Mexico, declaring and publishing this instrument as the Grantor's Living Trust, in the presence of the undersigned witnesses, who witnessed and subscribed this Living Trust in the presence of the parties hereto.

_WILLIE LEE EDWARDS Jr (Grantor)_
_Edwards, Willie-Lee: (Trustee)_
_Edwards Jr, Willie Lee (Trustee)_

SIGNED AND DECLARED by the above parties on the 7th day of Sep 2022 to be the Grantor's Living Trust, in our presence, in Albuquerque, New Mexico, in their presence, all being present at the same time, have signed our names as witnesses. **Executed without the UNITED STATES, We declare under penalty of perjury under the laws of the united states of America that the foregoing is true and correct. Without Prejudice, UCC 1-308.**

Witness #1 Signature _Tammy Crook_
Witness #1 Name (Please Print) Tammy Edwards
Witness #1 Street Address 5705 Fairfax dr. nw
Witness #1 City/State Albuquerque, New Mexico

Witness #2 Signature _Ann Edwards_
Witness #2 Name (Please Print) Ann Edwards
Witness #2 Street Address 1505 Girard Blvd #9
Witness #2 City/State Albuquerque, New Mexico

Witness #3 Signature
Witness #3 Name (Please Print) Asjia mays
Witness #3 Street Address 37105 Bridgeport ct
Witness #3 City/State Palmdale, calif.

**We certify that the foregoing is true, correct, and is not misleading. The truth, the whole truth and nothing but the truth. Deuteronomy 19:15-21** "One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established."

**1 Timothy 6:17** "Charge them that are rich in this world, that they be in uncertain riches, but in the living God YAHWEH, who giveth us richly all things to enjoy."

**Exodus 31:3** "And I have filled him with the spirit of God YAHWEH, in wisdom, and in understanding, and in knowledge, and in all manner of workmanship.

Schedule A

The Grantor assigns, conveys and delivers to this Living Trust, all of the rights, title and interest, tangible or intangible, to any and all properties, real or personal:
1. All tangible and intangible assets of the WILLIE LEE EDWARDS (including all derivations of the name/title) along with: WLE ENTERPRYSE.
2. Any and all Intellectual Property created in both the past, present, or future in the name WILLIE LEE EDWARDS Jr. along with WLEJ ENTERPRYSE.



**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| **WILLIE EDWARDS 5053210126** |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| **WEDWARDS87121@ICLOUD.COM** |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| U/D WLEJ ENTERPRYSE REVOC LIV TR. WILLIE LEE EDWARDS<br>C/O 5705 FAIRFAX DR NW<br>ALBUQUERQUE, NM 87114 USA |

**ELECTRONICALLY FILED**
Office of the New Mexico Secretary of State
IFS Number: 20238145204J
Filing Number: 20230145204J
Filed on: 02/07/2023 06:19 PM
Total Number of Pages: 2

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **WILLIE LEE EDWARDS JR** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **111 N. HILL STREET RM. 204** | **LOS ANGELES** | **CA** | **90012** | **UNITED STATES** |

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **EDWARDS** | **WILLIE-LEE:** | | | **JR.** |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **111 N. HILL STREET RM. 204** | **LOS ANGELES** | **CA** | **90012** | **UNITED STATES** |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **EDWARD WILLIE-LEE TRUSTEE UNDER DECLARATION OF "WLEJ ENTERPRYSE REVOCABLE LIVING TRUST"** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **C/O 5705 FAIRFAX DR NW** | **ALBUQUERQUE** | **NM** | **87114** | **UNITED STATES** |

**4. COLLATERAL:** This financing statement covers the following collateral:
NON UCC FILING DOC #2023006827 02/06/2023 11:45AM Page:1 of 27 STMT R: Linda Stover, Bernalillo County/Recorder

**5. Check only if applicable and check only one box:** Collateral is
☑ held in a Trust (see UCC1Ad, item 17 and Instructions)
☐ being administered by a Decedent's Personal Representative

**6a. Check only if applicable and check only one box:**
☑ Public-Finance Transaction
☐ Manufactured-Home Transaction
☐ A Debtor is a Transmitting Utility

**6b. Check only if applicable and check only one box:**
☐ Agricultural Lien
☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):**
☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

Form **2848**
(Rev. January 2021)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative
▶ Go to *www.irs.gov/Form2848* for instructions and the latest information.

OMB No. 1545-0150

**For IRS Use Only**
Received by:
Name _____
Telephone _____
Function _____
Date ___/___/___

## Part I   Power of Attorney

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1   Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) | | |
|---|---|---|---|
| WILLIE LEE EDWARDS JR<br>5705 Fairfax Dr Nw.<br>Albuquerque, New Mexico [87114] | 556 | 39 | 8624 |
| | Daytime telephone number<br>505-321-0126 | Plan number (if applicable) | |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| WILLIE LEE FAMILY OF EDWARDS JR ESTATE<br>5705 Fairfax Dr Nw.<br>Albuquerque, New Mexico [87114] | CAF No. ___none___<br>PTIN ___none___<br>Telephone No. _____<br>Fax No. _____ |
| Check if to be sent copies of notices and communications ☑ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | |
| WLEJ ENTERP REVOC LIV TR.<br>5705 Fairfax Dr Nw<br>Albuquerque, New Mexico [87114] | CAF No. ___none___<br>PTIN ___none___<br>Telephone No. _____<br>Fax No. _____ |
| Check if to be sent copies of notices and communications ☑ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | |
| WILLIE LEE EDWARDS JR TR.<br>5705 Fairfax Dr Nw.<br>Albuquerque, New Mexico [87114] | CAF No. ___none___<br>PTIN ___none___<br>Telephone No. _____<br>Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | |
| | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3   Acts authorized (you are required to complete line 3).** Except for the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| Income, employment, excise tax, payroll, whistleblower, tax gift, transations,accounts, transcripts, return receipts, estate matters | 1041,1041v 56, 56f, 1099a, 1099b, 1099c, 1098, 1096, 1099misc, k1 | 01/07/2022 to present |
| reords of accounts NM DIST CC# 19CR00593JCH, PLR, FOIA instrumentalities, tendering of public matters, indorsement | 941, all schedules, 709, 706, 8832, 1099old, 1099int, 1099div | 2019 |
| Bankruptcy CC 22-10286T7, Color of law Matters, Securities, and trus Matters, Master ledger, Administrative Matters, endorsement | 575cp, 1099cap, FSA forms,OMB forms, treasury forms | |

**4   Specific use not recorded on the Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See *Line 4. Specific Use Not Recorded on CAF* in the instructions . . . . . . . . . . ▶ ☐

**5a   Additional acts authorized.** In addition to acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☑ Access my IRS records via an Intermediate Service Provider;
☑ Authorize disclosure to third parties;  ☑ Substitute or add representative(s);  ☑ Sign a return; **POA is being filed pursuant to 26 1.6012-1(A)(5), which requires a POA to be attached to a return if return is signed by any reason of (b) continuous absence from the united staters for a period of at least 60 days prior to date required for filing return**

☑ Other acts authorized: Civil matters, crimnial matters, color of law matters, securities and banking matters, trust matters, bankruptcy matters,master account ledger,Administrative matters, interstate and intrastate commerce, tendering of public and private instruments

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.        Cat. No. 11980J        Form **2848** (Rev. 1-2021)

Form 2848 (Rev. 1-2021)

Page **2**

**b   Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

---------------------------------------------------------------

**6   Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this form. If you do **not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7   Taxpayer declaration and signature.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| *Willie Lee Edwards* TTEE | 01/30/2023 | ALL RIGHTS RESERVED, TTEE |
| Signature | Date | Title (if applicable) |

By: WILLIE LEE EDWARDS JR TTEE,  FOR
WLEJ ENTERP REVOC LIV TR.

WILLIE LEE EDWARDS JR

Print name

Print name of taxpayer from line 1 if other than individual

## Part II   Declaration of Representative

Under penalties of perjury, by my signature below I declare that:

• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;

• I am subject to regulations in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;

• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and

• I am one of the following:

a   Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

b   Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

c   Enrolled Agent—enrolled as an agent by the IRS per the requirements of Circular 230.

d   Officer—a bona fide officer of the taxpayer organization.

e   Full-Time Employee—a full-time employee of the taxpayer.

f   Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).

g   Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the IRS is limited by section 10.3(d) of Circular 230).

h   Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). **See Special Rules and Requirements for Unenrolled Return Preparers** *in the instructions for additional information.*

k   Qualifying Student or Law Graduate—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student, or law graduate working in a LITC or STCP. See instructions for Part II for additional information and requirements.

r   Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited to section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable) | Bar, license, certification, registration, or enrollment number (if applicable) | Signature | Date |
|---|---|---|---|---|
| D | TRUSTEE | N/A | *Willie Lee Edwards* | 01/30/2023 |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2021)

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## PARTIES:

**Party of the First Part:** WLEJ ENTERPRYSE REVOCABLE LIVING   TR , ° the COPYHOLD TRUST/Estate/Bailor also under any and all derivatives and variations in the spelling thereof, with the exception of "Willie-Lee: Edwards Jr"./ Edward Jr Willie-Lee **Under account EIN No.** 88-6738496, with **all** property Lawfully part of the **TRUST held as** a REVOCABLE LIVNG Trust Estate 28 U.S.C. 1603(b)(3); 8 U.S.C. 1101(a)(14); 26 U.S.C. 7701(a)(31).

**Party of the Second Part:** "Willie-Lee: Edwards Jr", Edward Jr Willie-Lee (as "**Trustee/Secured Party/Bailee**") a Live Natural Man a flesh-and-blood Almighty God-created private Christian American sui juris sentient being; and an Ambassador of God Almighty (2nd Corinthians 5:20) Domiciled in New Mexico Republic and on religious sojourn through the UNITED STATES; One, who is as a "Non-resident alien" as defined within 26 U.S.C. 7701(b)(1)(B)], []sic, in regards the UNITED STATES [28 U.S.C. 3002(15)(A); U.C.C. 9-307(h)] with express, explicit, revocable reservation of all natural God-given & **unalienable Rights**; including but **not** limited by F.S.I.A. without prejudice U.C.C. 1-207; U.C.C. 1-308, U.C.C. 1-103.6 (Anderson's UCC) reserved ab initio, nunc pro tunc:

**Beneficiaries:** named in ADDENDUM TO MINUTES OF INITIAL MEETING OF TRUST, in which the trust is to the ultimate benefit for. Interest and use hereinafter held in trust and administered as trustee by: Willie-Lee: Edwards Jr; hereinafter: real party authorized representative of the WLEJ ENTERPRYSE REVOCABLE LIVING TR ,/Estate.

## CAUSE:

This Security Agreement is made and entered into by and between TRUST and TRUSTEE/Secured Party Creditor respectively.

PERFORMANCE SECURITY                          RECEIVABLE SECURITY
PAYMENT SECURITY                               NEGOTIABLE SECURITY
NEGOTIABLE DRAFT                               SECURED BY COLLATERAL

If any part or portion of this Security Agreement is found to be invalid or unenforceable, such part or portion shall not void any other part or portion as reasonably severable from said parts or portions, and does not affect the remaindered of the agreements.

## AGREEMENT

IN CONSIDERATION, TRUST grants all interests to Secured party in exchange for Secured Party, acting to manage, protect and defend all interests of TRUST, to create additional value, and to manage in the personal capacity to transmit business in the private or public capacity as necessary.

The collateral is described herein:

# SECURITY AGREEMENT

Non-Negotiable Private Agreement

- All Schedules.
- All filings.
- All accounts.
- All fixtures.
- All derivatives.
- All registries.
- All certifications.
- All licenses.
- All bonds.
- All charters.
- All treaties.
- All obligations due.
- All duties charged.
- All Articles of Incorporation.

- All Oaths.

- All applications.
- All acceptances.
- All insurances.
- All intellect.
- All beneficial interests including mutual funds, retirement funds, severance pay, college education funds, pension funds, well fare, charity, food stamps, Social Security.
- All UCC filings, in the nominee of BENEFICIARY as CREDITOR and all property referred as 'collateral' or 'surety'.
- All UCC filings in the nominee TRUST herein, as CREDITOR and all property referred as 'collateral' or 'surety'.

To secure all property, interest, income and benefits from TRUST'S entire estate, minus all liabilities. Including all sources derived from direct and indirect, absolute or contingent, due or future, and/or dismissed, abandoned, conveyed, transferred, held, and/or possessed in both the public and in private. This also includes: all agreements parole or expressed, held in trust, Estate, in rem, or receivable, including but not limited to pre-existing and future claims, and all potentials including the rights of subrogation. TRUSTEE/SECURED PARTY maintains the right of:

1. Signing for TRUST in all cases whatsoever wherein any signature of TRUST is required.
2. Issuing a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection.
3. Providing the security by TRUST for payment of all sums due or owing, past, present and future.
4. Investigation of all sources of assets, exercise of faculties, and labor of SECURED PARTY, that provide the valuable consideration sufficient to support any contract which TRUST may execute or to which TRUST may be regarded as bound by to any person whatsoever and subjects TRUST to:
   a. Voluntary entry of TRUST into the Commercial Registry.
   b. Transfers, conveyances and assignments to Trustee/Secured Party, a security interest in all collateral and interests, including that described herein if necessary and in benefit of the trust.
   c. Agreements to be, act, and function in law and commerce, as the unincorporated, proprietary trademark of WLEJ ENTERPRYSE REVOCABLE LIVING TR.© for exclusive and discretionary use by Trustee/SECURED PARTY in any manner that Trustee/SECURED PARTY elects.

## PUBLIC LAWFUL NOTICE

Filing or registration of this Security Agreement by any Party constitutes open, lawful, public notice that:

The law, venue, and jurisdiction of this Security Agreement is the ratified, finalized, signed, and sealed private contract freely entered into by and between TRUST and Trustee/SECURED PARTY and registered herewith. This Security Agreement is contractually complete herein and herewith and cannot be abrogated, altered, or amended, in whole or part, without the express, written consent of SECURED PARTY.

1. Trustee/SECURED PARTY signing, signs by/for TRUST, when necessary, in every manner where TRUST'S signature is required. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

2. All property of TRUST is assigned to TRUSTEE/SECURED PARTY for management, safekeeping, and all trust related business.

3. TRUST authorizes all uses of TRUST'S name in any manner TRUSTEE/SECURED PARTY elects.

4. All other uses of TRUST'S name must be done with express consent of TRUSTEE/SECURED PARTY, and is placed under copyright as seen in included common law copyright under number *019341227*WLE-CLC.

5. All legal means to protect the security interest being established by this Agreement will be used by TRUSTEE/SECURED PARTY.

a) Whenever necessary and all support needed by TRUSTEE/SECURED PARTY to protect security interest in the collateral herein identified or otherwise added will be provided by TRUSTEE/SECURED PARTY including but not limited by commercial/tort lien process, or any other necessary applicable means to secure trust property.


TRUST warrants that TRUSTEE/SECURED PARTY'S claim against the collateral is enforceable according to all STANDARD TERMS AND CONDITIONS expressed herein. In addition, all applicable laws promulgated for protecting the interests of a TRUSTEE/CREDITOR apply.


TRUSTEE/SECURED PARTY also warrants that it embraces and controls all interests to the collateral, free and clear of all actual and constructive lawful liens, levy and encumbrances. Encumbrances presented, to or belonging to TRUST, against the collateral therein shall remain secondary to this agreement, unless registered prior to the registration this agreement or the interest represented herein, establishing them as non-transferable, as is well-established in international commercial law.


TRUST shall promptly advise TRUSTEE/SECURED PARTY of any Claims and provide TRUSTEE/SECURED PARTY with full details of said Claims, *inter alia*, copy of all documents, correspondence, suits, or actions received by or served upon TRUST. TRUST shall fully cooperate with TRUSTEE/SECURED PARTY in any discussion, negotiation, or other proceeding relating to any Claim AS IT AFFECTS TRUST/TRUSTEE rights.


## GENERAL PROVISIONS

### Possession of Collateral

Collateral or evidence of collateral may remain in the possession of TRUST, to be kept at any location elected by TRUSTEE/SECURED PARTY. Notice of changes in location will be made to TRUST within ten (10) days of such relocation. TRUSTEE/SECURED PARTY agrees not to otherwise remove the collateral except as is expected in the ordinary course of business. TRUST agrees to acquire prior written authorization from TRUSTEE/SECURED PARTY for any and all uses of any collateral outside the general scope of practice. TRUSTEE/SECURED PARTY may possess all tangible personal property included in collateral, and have beneficial use of all collateral, and may use it in any manner elected and not be considered beneficiary. TRUSTEE/SECURED PARTY'S right to possession and beneficial use does not change ownership of trust property and is unaffected by any collateral that is in the possession of TRUST, even if such possession is required by other law to perfect TRUSTS interest in such collateral. If TRUST, at any time, has possession of any part of the collateral, TRUSTEE/SECURED PARTY shall be deemed to have exercised reasonable care in the custody and preservation of the collateral.


## Proceeds and Products from Collateral

All proceeds and products from the disposition of the collateral, for whatever reason, shall be held in trust by TRUSTEE/SECURED PARTY and shall not be commingled with any other accounts or funds without the express consent of TRUSTEE/SECURED PARTY. Notice of such proceeds must be delivered to TRUSTEE/SECURED PARTY immediately upon receipt. TRUST agrees not to sell, offer to sell, or otherwise transfer or dispose of the collateral, except for inventory sold or accounts collected in the ordinary course of TRUST'S public business. TRUST must not pledge, mortgage, encumber, or

# SECURITY AGREEMENT

## Non-Negotiable Private Agreement

otherwise permit the collateral to be subject to any lien, levies, security interests, encumbrances, or charges, other than the security interests established by or through this Security Agreement, without the prior written consent of TRUSTEE/SECURED PARTY.

## Maintenance of Collateral

TRUST agrees to maintain all collateral in good condition and repair, and not to commit or permit damage to or destruction of the collateral or any part of the collateral. TRUSTEE/SECURED PARTY, and/or expressly authorized and designated representatives and agents, shall have the right at all reasonable times to examine, inspect, and audit the collateral wherever located. TRUST shall immediately notify TRUSTEE/SECURED PARTY of all cases involving the return, rejection, repossession, loss, or damage of or to any collateral, generally of all happenings and events affecting the collateral or the value or the amount of the collateral, and specifically, all requests for credit or adjustment of collateral, or dispute arising with respect to the collateral.

## Compliance with Law

TRUST shall comply promptly with all lawfully applicable laws, ordinances, and regulations of all properly authorized government authorities applicable with the production, disposition, or use of the collateral upon proof of claim. TRUST may contest in good faith any such law, ordinance, or regulation without compliance during a proceeding, including appropriate appeals, as long as TRUST/TRUSTEES interest in the collateral is protected and in no way jeopardized. TRUSTEE/SECURED PARTY may, upon election, intervene in any situation that appears to place the collateral in jeopardy.

## Public Disputes

TRUST agrees to discharge all applicable taxes, assessments, and liens, when due, against any collateral in his possession; provided that such taxes, assessments, and liens are proved to be superior to the lawful claim established by this Security Agreement, and subsequently perfected by appropriate registration. In the event that TRUST elects to dispute such taxes, assessments, and liens, TRUSTEE/SECURED PARTY'S interest must be protected at all times, at the sole opinion of TRUSTEE/SECURED PARTY, who may, at his option, intervene in any situation that appears to jeopardize TRUSTEE/SECURED PARTY'S interest in protecting self-interest or that of the TRUST. TRUST may elect to continue pursuit of dispute of such taxes, assessments, and liens, only upon production of a surety bond by public claimant(s), in favor of TRUST/TRUSTEE sufficient to protect TRUST/TRUSTEE from loss, including all costs and fees associated with such dispute. Should public judgment against TRUST or any collateral result from such dispute, TRUST agrees to satisfy such judgment from its accounts established and managed by the UNITED STATES or its subdivisions, agents, officers, or affiliates appointed in due course to do so as not to adversely affect TRUST/TRUSTEES interest in the Collateral.

## SUBORDINATION OF TRUST'S DEBTS TO TRUSTEE/SECURED PARTY

Providing TRUSTEE/SECURED PARTY, subsequent to the execution of this agreement, perfects his security interest in the collateral by appropriate registration, TRUST agrees that its indebtedness to TRUSTEE/SECURED PARTY, whether now existing or hereafter created, shall have priority over unregistered claims that any third parties may raise against TRUST or the collateral, whether or not TRUST is or becomes insolvent. TRUST hereby expressly subordinates any claim that TRUST may have against TRUSTEE/SECURED PARTY, upon any account whatsoever, to the claims that TRUSTEE/SECURED PARTY has or will have against TRUST.

If TRUSTEE/SECURED PARTY so requests, all notes or credit agreements now or hereafter established, evidencing debts or obligation of TRUST to third parties, shall be marked with a legend that the same are subject to this agreement and shall be delivered to TRUSTEE/SECURED PARTY. TRUST agrees, and TRUSTEE/SECURED PARTY hereby is authorized, in the name of TRUST, to execute and file such financing statements and other commercial statements, as TRUSTEE/SECURED PARTY deems necessary or appropriate to perfect, preserve, and enforce his/her rights under this agreement.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## FIDELITY BOND

**Know all men by these presents,** that TRUST; WLEJ ENTERPRYSE REVOCABLE LIVING TR ,©, establishes this bond in favor of TRUSTEE/SECURED PARTY Willie-Lee: Edwards Jr, in the sum of present Collateral

Values up to the penal sum of Two Billion United States Dollars ($2,000,000,000.00), for the payment of which bond, well and truly made, TRUST binds TRUST by these presents.

The condition of the above bond is: TRUSTEE/SECURED PARTY covenants to do certain things on behalf of TRUST, as set forth above in Agreement, and TRUST, with regard to conveying goods and services in Commercial Activity to TRUSTEE/SECURED PARTY, covenants to serve as a 'commercial' transmitting utility therefore and, as assurance of fidelity, grants to TRUSTEE/SECURED PARTY a Security Interest in the herein below described Collateral.

This bond shall be in force and effect as of the date hereon and until TRUST; WILLIE LEE EDWARDS JR, is released from liability by the written order of the UNITED STATES GOVERNMENT and provided that said TRUST'S Surety; Willie-Lee: Edwards Jr may cancel this bond and be relieved of further liability hereunder by delivering thirty (30) day written notice to TRUST. No such cancellation shall affect any liability incurred or accrued hereunder prior to the termination of said thirty (30) day period. In such event of notice of cancellation, TRUST agrees to reissue the bond before the end of said thirty (30) day period for an amount equal to or greater than the above-stated value of this Security Agreement, unless it is agreed otherwise.

## INDEMNITY CLAUSE

TRUST, without the benefit of discussion or division, does hereby agree, covenant, and undertake to indemnify, defend, and hold TRUSTEE/SECURED PARTY harmless from and against all claims, losses, liabilities, costs, interests, and expenses, hereinafter referred to as "Claims" or "Claim". Claims include, without restriction, all legal costs, interests, penalties, fees and fines suffered or incurred by TRUST, in accordance with TRUSTEE/SECURED PARTY'S personal guarantee with respect to any loan or indebtedness of TRUST or collateral, including any amount TRUST might be deemed to owe to any CREDITOR for any reason whatsoever.

## OBLIGATIONS SECURED

The security interest granted herein secures all indebtedness and liability whatsoever of TRUST to TRUSTEE/SECURED PARTY, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and however evidenced.

## COLLATERAL

The collateral to which this Security Agreement pertains to, inter alia, is herein described below as personal and real property of TRUST. The collateral is now owned or possessed, and includes property hereafter acquired, by TRUST, in which TRUSTEE/SECURED PARTY now holds all security interests. TRUSTEE/SECURED PARTY retains all rights of use, including but not limited to, all principle, interests, proceeds, products, accounts, fixtures, and the Orders there from. All claims of TRUST are security interests released to TRUSTEE/SECURED PARTY for management thereof.

Before any of the herein itemized property can be disbursed, exchanged, sold, tendered, forfeited, gifted, transferred, surrendered, conveyed, destroyed, disposed of, or otherwise removed from TRUST'S possession, settlement with TRUSTEE/SECURED PARTY must be satisfied in full and acknowledgment of the same completed to the satisfaction of TRUSTEE/SECURED PARTY.

# SECURITY AGREEMENT

Non-Negotiable Private Agreement

## COLLATERAL CLARIFICATIONS

- All collateral including contracts, attachments, fixtures, agreements, addendums, derivatives, proceeds, products, goods, and services.
- All collateral including assets and equity.
- All collateral including institutional, industrial, manufacturing, educational, agricultural, social, and cultural purposes and uses;
- All collateral including structures and fixtures above and below ground including: cottages, cabins, houses, barns, sheds, warehouses, greenhouses, penitentiaries, stores, markets, facilities, stations, fences, corrals, docks, arenas, theaters, halls, clubhouses, offices, chambers, and buildings for any use or purpose;
- All collateral including infrastructure including all roads, driveways, sewers, plumbing, electricity, communications, networks, plants, facilities, septic, sanitation, irrigation, drainage, walkways, paths, tunnels, chambers, power and energy sources, and waste management for all uses and purposes;
- All collateral including property developed and undeveloped.
- All collateral including receipts and proof of purchase, registrations, products, goods, services, and proof of clear title and ownership.
- All collateral includes crops, the host that the crops are harvested from and all harvested and unharvested crops.
- All collateral includes materials processed, unprocessed, and raw materials and everything in between.
- All collateral including inventory harvested, un-harvested, pasteurized, unpasteurized, raw, unprocessed, processed, and produced and everything in between. • All collateral includes inventory, products, goods and services;
- All collateral includes potential.
- All collateral accounts include all assets and rights, for all purposes and uses, from accounts, fixtures, cases, liens, levies, instruments, documents, contracts, bonds, stock, certificates, agreements, grants, acquisitions, assumptions, conveyors, utilities, transmitters, accounts receivable, write-offs, and set-offs.
- All collateral including assets including all gains, proceeds, equity, capital, accounts receivable, derivatives, depreciations, inventory, materials, products, goods, and services.
- All collateral includes agricultural assets including all livestock, chattels, and crops. • All fixtures including attachments;
- All derivatives include all futures.
- All machinery, equipment, vessels, vehicles, crafts, and the like include all fixtures, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, *inter alia*: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, and fuels and fuel additives;
- All collateral includes the transfer of all Rights to buy, sell, trade, grow, raise, gather, hunt, trap, angle, and store food, fiber, and raw materials for shelter, clothing, survival and commercial and/or personal gain;
- All collateral may be used for any purpose or use TRUSTEE/SECURED PARTY elects;
- All collateral including income, principle, interest, benefits and gifts from every source; TRUSTEE/SECURED PARTY herein claims all collateral and rights of TRUST(s) attached to:

1. All assets, including accounts, principle, interest, capital, proceeds, products, inventory, accounts, cases, papers, documents, contracts, receipts, fixtures, derivatives and proof of Owner's Equity;
2. All rents, leases, sales, salaries, wages, gains, and income;
3. All land, water, mineral, and air rights including rights:
   a. All land including, residential, commercial, agricultural, forestry, parks and recreation, waterfront and beach, islands, atolls, and mining claims, leased, rented, or owned, developed and undeveloped;

# SECURITY AGREEMENT
### Non-Negotiable Private Agreement

b. All water rights including alluvial flow, lakes, rivers, oceans, aquifers, levies, banks, shores, streams, creeks, springs, ponds, reservoirs, contributories, beds, bars, deltas, swamps, pools, wells, irrigation, rain, snow, runoff, condensation, catches, basins, ditches, and troughs;

c. All mineral rights including minerals, metals, and mining and extraction right;

d. All air rights including the air itself and the space it exists in, plus all rights of marketing and extraction;

4. All accounts, bank and otherwise, including "safety deposit" boxes and the contents therein, credit card accounts, mutual fund, money markets, investment, portfolios, trust accounts, certificates of deposit, checking, savings, retirement plans, deposits, escrow, mortgage, college fund, stocks, bonds, securities, certificates on deposit, bonds, vacation, time share, certificates of deposit, drafts, futures, notes, options, puts, calls, pension plans, warrants, 401-K's, and the like;

5. All cash, coins, money, Federal Reserve Notes, and Silver Certificates;

6. All benefits from all tertiary or subsequent trust account;

7. All inventory and raw materials;

8. All machinery;

9. All equipment;

10. All vessels, including all boats, yachts, ships, and water craft;

11. All vehicles including autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, tricycles, wheeled conveyances;

12. All crafts;

13. All aircraft, including gliders, balloons;

14. All motor homes, trailers, mobile homes, recreational vehicles, house, cargo, and travel trailers;

15. All fixtures, accoutrements, baggage, and cargo;

16. All agricultural assets including livestock, chattels, food, supplies, seeds, plants, chemicals, crops;

17. All computers, computer-related equipment and accessories, stored files and data and peripherals for all uses;

18. All office equipment including communications equipment, computers, printers, scanners, office copiers and office machines;

19. All electronics and equipment, including hobby, computers, printers, recreational and business applications and uses;

20. All aural/audio and/or video capturing, production, video recorders, cam recorders, voice recorders and/or reproduction systems and peripherals, films, tapes, sound tracks, compact discs, phonographs, jukeboxes, records, film, cameras, projectors, and televisions for all uses;

21. All musical instruments;

22. All manuscripts, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, music;

23. All books and manuals;

24. All aliases, identities, D/B/A and nicknames;

25. All Trademarks, Registered Marks, copyrights, patents, proprietary data and technology, inventions, royalties, good will;

26. All credentials, scholastic degrees, diplomas, honors, awards, meritorious citations;

27. All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever;

28. All live scans and corporal identification factors, including RNA, DNA, gene bank information, blood and blood fractions, biopsies, tissue, body parts, organs, hair, teeth, nails, semen, eggs, urine, fluids or matter, voice-print, retinal image, fingerprints, footprints, palm prints, thumbprints, and said factors' physical counterparts, in any form, and all records, BEAST numbers, record numbers, and information pertaining thereto and the descriptions therefrom;

29. All biometrics data, records, information, patents, copyrights, and trademark and processes not elsewhere described, the use and proceeds thereof; and the use of the information contained therein or pertaining thereto;

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

30. All Rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage, nourishment, or water, or any substance to be infused, ingested, injected into, or affecting the body by any means whatsoever;

31. All Rights to request, refuse, or authorize the administration of; any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method, or process whatsoever;

32. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;

33. All Rights to access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most-favored customers, *inter alia*, cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, www, and all other methods of communication, energy transmission, and food water and/or sustenance distribution;

34. All Rights to barter, buy, contract, sell, or trade ideas, products, services, or work;

35. All suppliers, manufactures, shippers, consultants, resources, employees, professionals, contractors, subcontractors, mailing lists, data bases, and customers;

36. All Names, Nominees, DBAs and Corporate Seals used and/or executed, registered, claimed, assumed, presumed, and/or filed, and the right to be executed and filed, under said names;

37. All intellectual property, goods, and services;

38. All signatures, signs and seals;

39. All insurance policies including life, health care, unemployment, workman's compensation, malpractice, risk, disability, homeowner's, automobile, business, license, renter's, hazard, and those against losses, damages, injuries and the like professional and private.

40. All present and future retirement incomes;

41. All nest eggs and hidden money in antiques, old vehicles and the like;

42. All survivorship rights and benefits;

43. All inheritances prior, present and future;

44. All prepaid burial plots, funeral expenses and services;

45. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, *inter alia*, all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers, and the like;

46. All library cards and rights;

47. All credit, charge, and debit cards, mortgages, notes, applications, card numbers, and associated records and information;

48. All court cases and judgments, past, present, and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;

49. All jewelry, heirlooms, precious metals, bullion, coins, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;

50. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;

51. All lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and records numbers, correspondence, and information pertaining thereto or derived there from;

52. All agricultural crops, includes herbs, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagation plants, and seeds, and all related storage facilities, greenhouses, products of and for and all equipment, inventories, tools, supplies, contracts, accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

53. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts, and supplies, and storage sheds and contents;

54. All fuel, fuel tanks, containers, and involved or related delivery systems;

55. All leisure and professional hobby, metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops, and facilities;

56. All leisure and sporting, fishing, hunting, and camping equipment, and all special clothing, materials, supplies, boats, Jet Ski's, trailers, snowmobiles, ATV's equipment, RV's, camping equipment of any kind and baggage related thereto;

57. All rifles, guns and related accessories, ammunition and the integral components thereof;

58. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring, and related accouterments and devices;

59. All power-generating and/or transforming machines or devices, and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining or attached thereto;

60. All hot tubs, Jacuzzis, and pools;

61. All personal and professional construction tools, equipment and supplies including water wells and welldrilling equipment, and all ancillary equipment, chemicals, tools, and supplies;

62. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in transit, or in storage anywhere;

63. All building and development plans, permits, licenses, bonds, and insurances.

64. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;

65. All books, drawings, magazines, manuals, and reference materials regardless of physical form;

66. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs, and all frames and mounts pertaining or affixed thereto;

67. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;

68. All wedding bands and rings, watches, wardrobe, and toiletries;

69. All household goods and appliances, linens, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, antiques;

70. All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories, accounts, trash, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;

71. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, TRUST, whether received or not received by TRUST;

72. All telephone numbers, and contacts;

73. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of TRUST. This as it applies to any and all 'property' as described in detail and registered and filed under necessity in the exercise of the right of Redemption by TRUSTEE/SECURED PARTY and/or CREDITOR.

74. Proceeds from BENEFICIARY'S property, labor and intellectual contributions from every source;

75. TRUST'S CERTIFICATION OF BIRTH and including Application for Birth Certificate and File Number, and all other Certificates of Birth, Certificates of Living Birth, Notifications of Registration of Birth, or Certificates of Registration of Birth, or otherwise entitled documents of birth whether county, state, federal, or other either ascribed to or derived from the name of TRUST identified above, or based upon the above described birth document.

76. All Immigration and legalization papers

77. All Social Security BENEFITS

78. All Driver Licenses # driver license number

79. All UCC Filings and Number UCC File # plus all addendums

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

80. All property listed on Legal Notices and Demands that are filed in TRUST'S county, state, and nation.
81. All registration in county, state, national and international registries

NOTE: TRUSTEE/SECURED PARTY reserves the right to add or amend this private Security Agreement as needed or as necessary by TRUSTEE/SECURED PARTY or expressly authorized representative.

82. building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;
83. All construction machinery, equipment, supplies, resources, tools, vehicles and all ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

## ADVISORY

All instruments and documents referenced/itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and per intent of House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of TRUSTEE/SECURED PARTY, and not dischargeable in bankruptcy court as TRUST is exempt from third-party levy. This Security Agreement supersedes all previous contracts or Security Agreements between TRUST and TRUSTEE/SECURED PARTY except for Contracts included.

TRUST agrees to notify all of TRUST'S former CREDITORS, future CREDITORS, and any possible purchasers of the herein-described Collateral status, of this Security Agreement.

This Security Agreement devolves on BENEFICIARIES and ASSIGNS, who take title to this Security Agreement, as TRUSTEE/SECURED PARTY to hold and enforce interests by CONSENSUAL AGREEMENT and Private Contract in deed and stead of BENEFICIARY.

TRUSTEE/SECURED PARTY maintains the right to sign for TRUST when and wherever the signature of TRUST will be required and necessary. TRUSTEE/SECURED PARTY signs for TRUST as 'agent' and/or 'AUTHORIZED REPRESENTATIVE' of TRUST. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

TRUSTEE/SECURED PARTY maintains all options and rights of transfer, and may issue an assignment of the complete Security Agreement or any division of parts therefrom. In the event of dishonor by TRUST, or difficulties in collection, TRUSTEE/SECURED PARTY has full authority and agreement to take all actions deemed necessary for acquisition of remedy and receivables by any means.

## BREACH OF CONTRACT

1. Any of the following events will establish a breach:
   a. Failure by TRUST to pay TRUSTEE/SECURED PARTY any secured debts when due.
   b. Failure by TRUST to perform any secured obligations when required to be performed.
   c. Any breach of any warranty or guarantees by TRUST contained in this Security Agreement.
   d. Any breach, loss, damage, expense, fee, custom, duty, or injury to TRUSTEE/SECURED PARTY by virtue of the Private Contract, or included on PRICE LIST.
   e. Failure to report any income or precedes accruing from any principles, interests, or transactions.
   f. Evidence that a statement, warranty, guarantee or representation made or implied, at any time, in this or other Agreements by TRUST, is false, misleading, or incomplete in any material respect made or furnished.

Dissolution or termination of TRUST'S existence as a legal entity or the insolvency of TRUST, upon the appointment of a receiver, for all or any portion of TRUST'S property, an assignment for the benefit of inferior CREDITORS, or the commencement of proceedings under bankruptcy or insolvency laws by or against TRUST.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

Commencement of foreclosure by any other CREDITOR against TRUST or the collateral, garnishments or other attachments from obligations or debts due to TRUST from all accounts receivable, and/or other funds due and payable to TRUST at any time;

Any violation of this agreement will constitute a penalty in accordance with and outlined in the "Legal Notice and Demand".

TRUSTEE/SECURED PARTY now holds all interests in any and all property belonging to, in possession, use or control of TRUST.

## Cure of Breach

If a breach under this agreement is curable through an account held by TRUST but managed by the UNITED STATES or one of its subdivisions, agents, officers, or affiliates, such breach may be cured by TRUST with express consent and voluntary agreement by TRUSTEE/SECURED PARTY; and upon advice by the Fiduciary that the breach has been cured and no event of breach will be acted upon. A breach under this agreement, initiated by third party intervention, will not be considered a breach if such intervention is challenged by TRUST, in a good faith effort to confirm or disprove the validity or reasonableness of the public claim which is the basis of the public CREDITOR'S proceeding; but TRUST must, in that event, deposit such surety with TRUSTEE/SECURED PARTY as is necessary to indemnify TRUSTEE/SECURED PARTY from loss.

## Acceleration

In the event of breach, TRUSTEE/SECURED PARTY may declare any/entire indebtedness immediately due and payable without notice.

## Liquidation of Collateral

In the event of breach, TRUSTEE/SECURED PARTY shall have full power to privately or publicly sell, lease, transfer, trade, rent, exchange, or otherwise deal with the collateral, products or proceeds, in his own name, in the name of TRUST or other nominee. All expenses related to the liquidation of collateral shall become a part of TRUST'S indebtedness. TRUSTEE/SECURED PARTY may, at his discretion, transfer part or all of the collateral to his/her own name or to the name of nominee for the protection of trust property and the heirs and assigns as beneficiaries.

## Rights and Remedies

TRUSTEE/SECURED PARTY holds all rights and remedies of a Secured CREDITOR under the provisions of the Uniform Commercial Code (UCC), as the UCC has been adopted in the state where part or all of the collateral is located or presumed to be located, or internationally as elected by TRUSTEE/SECURED PARTY. TRUSTEE/SECURED PARTY holds the right to proceed in Universal jurisdictions and venues, by self-help, or with or without a public court, tribunal, collection or enforcement agencies. Rights and remedies available to TRUSTEE/SECURED PARTY may be exercised singularly or jointly and in all venues and jurisdictions concurrently at the sole discretion and election of TRUSTEE/SECURED PARTY. The TRUST will bear all costs and liability to all actions.

## MISCELLANEOUS PROVISIONS

### Amendments

This agreement and the related documents established mutual assent and a meeting of the minds. No alteration of, set-off or amendment to this agreement shall be effective unless expressed in writing under voluntary, noticed, informed consent of the TRUSTEE/SECURED PARTY.

## Applicable Law.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

The Contract and Security Agreement is the law, and the law is the Contract and Security Agreement. The guidelines for the laws of the Contract and this Security Agreement, is the mutual assent and agreement of the Parties, expressed by the Contract and Security Agreement. It was modeled after, created from, and is supported by Private International Law, in accord with the Laws of Nations. International and Domestic Laws, supported by the Administrative Procedures Act, the Civil Procedure

Act, and the Uniform Commercial Code as adopted by International and state legislation of all U.S. States, and unwritten by Common Law, Contract Law, Cannon Law, Constitutional Law, Merchant Law, Property and Estate Law, Statutory Law, Civil Law, Tort Law, Commercial Law, Trade Law, Judiciary Laws Securities Law and Legislative Law, Executive Law, and most other forms of law in almost all jurisdictions and venues. It conforms to almost all other ABC organizations and agencies including GAAT, UNCITRAL, UNIDROIT, and CIGS. Case Law, aka, stare decisis, supports this Contract and Security Agreement, but is not ever cited for good cause. Common Law is only superseded by Equity Law when the Common Law does not provide for remedy.

It is impossible, and always will be, to address all the "Policies", "Signing Statements", and/or other unknown, undisclosed trickery, lies, deceptions and forms of fraud, embezzlement, organized crime, and RICO actions, used to override law and justice in today's world

## Expenses

TRUST agrees to pay for all losses, costs, fees, time, taxes, expenses, and professional fees, incurred by TRUSTEE/SECURED PARTY to collect or enforce the provisions of this agreement

## STANDARD TERMS AND CONDITIONS

All of the STANDARD TERMS AND CONDITIONS as set forth in "ATTACHMENTS 'A' – DEFINITIONS" Document Item Number: *019341227*WLE-AA apply hereto, plus all incidentals, some duplicated or left in the Security Agreement, for the purpose of convenience and/or comprehension. They shall not be considered in bad faith, unclean hands, misleading or nondisclosure as there is no intent of such by the TRUST or TRUSTEE/SECURED PARTY. Errors and Omissions are consistent with intent.

## Indebtedness

Debt is that which is owed; usually referencing assets owed. The word "indebtedness" means the debt evidenced by this Security Agreement, or a claim against TRUST, and all TRUST'S present and future possessions identified in this agreement as collateral; and all public obligations and debts ascribed to TRUST through contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive. All claims made by TRUSTEE/SECURED PARTY against TRUST, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or not, regardless of whether TRUST is or may be individually or jointly, obligated as, or beneficiary of, a surety or accommodation party are the collateral for the debt owed.

## Related Documents

The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, Security Agreements, mortgages, deeds of trust, applications, accounts, licenses, policies, permits, identification cards, account cards, receipts, forms, and all other documents and instruments that TRUST or its previous surety has or will execute in connection with TRUST'S total indebtedness.

The term *inter alia* may be used to include "related documents". It literally means 'among other things'.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

## Notices

All notices required to be given by either party under this agreement, shall be in writing or Proof of Fax and shall be effective when actually delivered, when deposited with the United States Post Office or a nationally recognized delivery service that both parties agree to. Notice must be given to SECURED PARTY at the address shown on this Agreement or to such other address as designated to the other in writing.

## Severability

If one or more provisions of this agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a qualified court finds that one or more provisions of this agreement is invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either party, the agreement shall be amended in a lawful manner to make all parties whole.

## Waiver of Contractual Right

The failure of either party to enforce one or more provisions of this agreement shall not be construed as a waiver or limitation of that PARTY'S right to subsequently enforce and compel strict compliance with every provision of this agreement. TRUSTEE/SECURED PARTY shall not be deemed to have waived any rights under this agreement unless such waiver is given in writing and signed by TRUSTEE/SECURED PARTY under voluntary, noticed, informed consent. No delay, error or omission on the part of TRUSTEE/SECURED PARTY in exercising a right or option shall operate as a waiver of such right or any other right. A waiver by TRUSTEE/SECURED PARTY of a provision of this agreement shall not prejudice or constitute a waiver of TRUSTEE/SECURED PARTY'S right otherwise to demand strict compliance with that provision or any other provision of this agreement. No prior waiver by TRUSTEE/SECURED PARTY, nor any course of dealing between TRUSTEE/SECURED PARTY and TRUST, shall constitute a waiver of TRUSTEE/SECURED PARTY'S rights or of TRUST'S obligations under this agreement as to future transactions. Whenever the consent of TRUSTEE/SECURED PARTY is required under this agreement, the granting of such consent by TRUSTEE/SECURED PARTY in one instance shall not constitute consent over the whole or any portion therefrom.

## Ambiguities and Interpretation

Each party acknowledges receipt of this agreement and has had the opportunity to have counsel and/or anyone they chose review it. Any rule of construction claiming ambiguities is to be resolved against the drafting party and shall not apply in the interpretation of this agreement or its amendments. All statements in this instrument are important to the parties. Misunderstandings have been resolved prior to execution.

## Authority to Represent

A signer of this agreement on behalf of a legal entity certifies that he/she has the authority to sign this agreement and that this transaction has been duly authorized by such entity.

## Gender

All references within this agreement to a specific gender include the other.

**Note:** TRUSTEE/SECURED PARTY reserves the right to satisfy any judgment, lien, levy, debt, or obligation, whether secured, unsecured, or purported to be secured, against TRUST by acceptance for value and return for adjustment, settlement and closure, executing a Bill of Exchange, or against the Fidelity Bond registered herewith under necessity, as the TRUSTEE/SECURED PARTY may select.

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement
## SIGNATURES
## Applicable to all Successors and Assigns

TRUSTEE/SECURED PARTY executes this Security Agreement certified and sworn on TRUST'S unlimited liability true, correct, and complete, and accepts all signatures in accord with UCC § 3-419 INSTRUMENTS SIGNED

WLEJ ENTERPRYSE REVOCABLE LIVING TR ©          _William Lee Calvaros Jr. TTEE_

**TRUST SIGNATURE**                             **Trustee/Secured Party's Signature**

Party of the First Part                          Party of the Second Part
  U.C.C. § 1-201(39)

                                                 **Authorized Representative,**

  Common Law Copyright 1992

                                                 U.C.C. § 1-201(35)


### All Rights Reserved

#### W I T N E S S E S

We the undersigned Witnesses hereby STAND and Attest that the fore signed, signed this document on the date listed supra, of their own Free Will, as witnessed by Our Signatures below:

**First Witness Signature**                      **Second Witness Signature**

                                    **Address:**                              **Address:**
5705 FairFax dr NW                               1505 Girard Blvd #9
Albuquerque, New Mexico                          Albuquerque, New Mexico
              87114                                            87106


Security Agreement                  Page 14                  Item#*019341227*WLE-SA

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

To avert losses of vested rights in the present or future collateral that is the subject of the attached Security Agreement, TRUST agrees to make available to TRUSTEE/SECURED PARTY, such accounts established by intent of the parties, by operation of law, and/or as constructive trusts, to hold proceeds arising from assets belonging to TRUST, and administered by the UNITED STATES or its subdivisions, agents, or affiliates. Pursuant to existing laws of the UNITED STATES and the agreement of the parties of this Security Agreement, TRUSTEE/SECURED PARTY is authorized to assign such funds from said accounts as are necessary to settle all past, present, and future public debts and obligations incurred by TRUST on behalf of TRUSTEE/SECURED PARTY.

---

TRUST hereby confirms that this Security Agreement is a duly executed, signed, and sealed private contract entered into knowingly, intentionally, and voluntarily by TRUST and TRUSTEE/SECURED PARTY, wherein and whereby TRUST:

WLEI ENTERPRYSE REVOCABLE LIVING TR . ©

**TRUST SIGNATURE**

## NOTICE OF LIEN

This agreement constitutes an International Commercial Lien on all property (in each of their individual capacity/form/item) of TRUST (indemnitor) on behalf of, and for the benefit of, TRUSTEE/SECURED PARTY CREDITOR (indemnitee) in the amount of $2,000,000,000.00 (Two Billion), in silver dollars, fiat money, or money of account/credit, at par value. This lien will expire at the moment that the indemnitee expires or when this lien is satisfied by any Third Party Interloper who seeks to take/seize any of said property, or upon fulfillment of trusts purpose in distribution to beneficiaries and trust dissolution in proper due course.

NOTORIETY PAGE IN THE UNITED STATES UNDER PENALTY OF PERJURY

**U.S. PERSON IDENTIFICATION**

**WILLIE LEE EDWARDS JR. GRANTOR**

ALL RIGHTS RESERVED AND RETAINED

*Willie Lee Edwards Jr TTEE*

**WILLIE-LEE: EDWARDS JR**

AGENT

NOTICE

**Using a notary on this document does not constitute any adhesion, nor does it alter my status in any manner. The purpose for notary is verification only and not for entrance into any foreign jurisdiction, a benefit for minors and the incompetent whom i anticipate may become knowledgeable in the truth for law by our forefathers/foremothers and rise, so they will no longer be alienated from their culture and creator.**

**JURAT**

**Bernalillo county    )**

                                )ss.

**New Mexico state    )**

TRUST

As a Notary Public for said County and State, I do hereby certify the attached 31 pages to be a true, and correct and comlete copy of the documents entitled:

Witness my hand and seal, this _____30_____ day of _January_ 2023.

Stamp

NOTARY PUBLIC: *Destiny Padilla*

DESTINY PADILLA
Notary Public - State of New Mexico
Commission # 1128714
My Comm. Expires May 18, 2024

1

W Edwards
3167 San Mateo PE. #272
Albuquerque, NM 87110

US District Court District
of New Mexico
333 Lomas blvd. NW #270
Albuquerque, N M 87102



7020 2450 0000 4419 6354

CERTIFIED MAIL